# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEFFREY SIGSBY** | **CIVIL ACTION** |
| **VERSUS** | **No. 18-1597** |
| **CARDINAL LOGISTICS MANAGEMENT CORPORATION, ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court is plaintiff Jeffery Sigsby's ("Sigsby") motion[1] *in limine* to exclude the testimony of Dr. Andrew G. Todd ("Dr. Todd") regarding the efficacy of radiofrequency ablation procedures ("RFAs"); how long RFAs are effective; the need for repeat RFAs; how frequently RFAs can be repeated; and how many future RFAs will be medically necessary for Sigsby. Defendants Cardinal Logistics Management Corporation ("Cardinal Logistics") and ACE American Insurance Company (collectively, the "defendants") have retained Dr. Todd, who is a board-certified orthopedic surgeon with a fellowship in scoliosis spinal surgery, as an expert witness. For the following reasons, the motion is denied.

### I.

This case arises out of a motor vehicle accident involving Sigsby and a Cardinal Logistics employee. The parties jointly stipulated to the defendants' liability, and the only remaining issues for trial are the nature, extent, and cause of Sigsby's damages.[2]

---

[1] R. Doc. No. 49.
[2] R. Doc. No. 37.

According to Sigsby, his treating physician has recommended that he undergo one RFA to his neck and one to his back every six to twelve months, indefinitely, to treat his symptoms.[3] Sigsby contends that, after performing an independent medical evaluation, Dr. Todd agreed that RFAs should be included in Sigsby's treatment plan.[4]

During his deposition, Dr. Todd testified that, although RFAs can be repeated successfully, he has only seen patients need three or four repeat RFAs.[5] He also testified that patients typically do not receive more than five to seven treatments.[6] The present motion seeks to exclude Dr. Todd's testimony regarding the efficacy of RFAs and the necessity of their repeated use—testimony that Sigsby characterizes as "arbitrarily limiting [his] future care."[7]

## II.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006). Rule 702 provides:

---

[3] R. Doc. No. 49-1, at 2.
[4] *Id.* at 3.
[5] Transcript of Dr. Andrew Todd, at 10 [hereinafter Transcript]. As an attachment to his motion in *limine*, Sigsby submitted a partial transcript of Dr. Todd's deposition. R. Doc. No. 49-2. Because, in their opposition, the defendants referred to pages that were not included in the partial transcript, the Court requested that Sigsby file a more complete version, which he did. R. Doc. No. 66. Considering there are two documents in the record that comprise the transcript, and to avoid confusion, the Court will reference the page numbers of the transcript, not the filing.
[6] *See* Transcript, *supra* note 5, at 10.
[7] R. Doc. No. 49-1, at 3.

2

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992) (quoting *United States v. Johnson*, 575 F.2d 1347, 1361 (5th Cir. 1978)). Rule 702 also states that an expert may be qualified based on skill, training, or education. Fed. R. Civ. P. 702.

"A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Id.* "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

The United States Supreme Court's opinion in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to act as a gate-keeper by conducting a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

A number of nonexclusive factors may be relevant to the reliability inquiry, including whether the expert's technique "(1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation[,] and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Runnels v. Texas Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining '*how* to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the

discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

For an expert witness's testimony to be reliable, it must "rest[ ] upon a reliable foundation." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1330–31 (5th Cir. 1996). "[E]xpert testimony that relies on 'completely unsubstantiated factual assertions' is inadmissible." *Moore v. International Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (quoting *Hathaway v. Bazany*, 507 F.3d 312, 319 n.4 (5th Cir. 2007)).

With respect to determining the relevance of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant . . . but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

"The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the [R]ule 702 test." *Mathis v. Exxon Corp.*, 302 F.3d 448, 460–61 (5th Cir. 2002) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)); *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). Furthermore, the Court is not bound by the rules of evidence—except for those with respect to privileges—when performing its gatekeeping function under *Daubert*. *See Daubert*, 509 U.S. at 592 n.10; Fed. R. Evid. 104(a).

### III.

Sigsby argues that Dr. Todd does not perform RFAs as part of his practice, so his experience, or lack thereof, does not qualify him to offer testimony about their

5

efficacy or required frequency.[8] During his deposition, Dr. Todd testified that, although he is trained to administer RFAs and often recommends them to his patients, he refers the actual procedures to pain management doctors.[9] In fact, he testified that he does so "all the time."[10] The defendants argue that Dr. Todd's opinions are, therefore, legitimately based on his experience and have a sufficiently reliable foundation.[11] The Court agrees.

Dr. Todd may not personally perform RFAs, but his deposition testimony makes clear that he is familiar with, and knowledgeable about, the procedure.[12] For example, to support Dr. Todd's assertion that, in practice, patients typically do not receive RFAs multiple times per year for the rest of their lives, he explained:

> [W]hat you're doing when you do this procedure is you're killing a nerve. . . . You're ablating a nerve. And when you ablate that nerve, yeah, it can grow back, but over time it grows back in a kind of disorganized—something that really—you do it enough times, you're not going to be able to ablate it. It's the same thing as if you injure a nerve a bunch of times in the hand or something like that. It's just kind of the nature of nerve things. It's . . . eventually [ ] going to become ineffective.[13]

Additionally, Dr. Todd has been recommending RFAs to his patients, and subsequently treating those patients, for over a decade.[14]

---

[8] *See* R. Doc. No. 49-1, at 6; *see also* Transcript, *supra* note 5, at 8.
[9] Transcript, *supra* note 5, at 8.
[10] *Id.*
[11] R. Doc. No. 56, at 4–5.
[12] *See* Transcript, *supra* note 5, at 9, 11–12. By analogy, an orthopedic surgeon may not administer X-rays, but he is certainly capable of reading the same.
[13] *Id.* at 12.
[14] *Id.* at 6.

6

Sigsby relies heavily on the fact that, during his deposition, Dr. Todd explained that his opinions were based, in part, on discussions he has had over the years with pain management doctors.[15] This is not an entirely accurate representation of Dr. Todd's experience.

In addition to stating that he is trained in the procedure and that he has performed RFAs before,[16] Dr. Todd testified that he has over a decade's worth of experience treating patients who have received RFAs on his recommendation:

> I'm involved in making decisions in terms of the patients that I'm treating. Say I'm treating a patient in a worker's compensation situation. You know, they come back to me, we see how they do. Certainly, we repeat radiofrequency ablations if someone has a good result, meaning greater than six months of . . . good relief of their symptoms. It's been my experience that they can be repeated and repeated successfully. I generally find three to four times is about as much as I've ever seen anybody need it. You really . . . don't see patients having more than that.[17]

Dr. Todd may not have significant experience performing RFAs, but his opinions do not relate to the technical nuances of the procedure. Rather, they relate to the procedure's effectiveness and the necessity of repeated RFAs over time. These topics are relevant to Dr. Todd's years of experience treating patients with neck and back pain and observing their progress after they receive RFA treatments. Dr. Todd relies on the pain management doctors to perform the RFAs, but he is the one who ultimately assesses his patients' conditions and determines their treatment plans, including whether to recommend additional RFAs.

---

[15] R. Doc. No. 49-2, at 7; R. Doc. No. 65, at 1–2.
[16] Transcript, *supra* note 5, at 8–9.
[17] *Id.* at 9–10.

7

Sigsby contends that Dr. Todd's opinions nonetheless do not meet the *Daubert* and Rule 702 standards because, during his deposition, Dr. Todd could not articulate any evidence or peer-reviewed studies supporting his assertion that RFAs are typically only administered, at most, five to seven times.[18] Sigsby requires too much: although he is permitted to question the foundation of Dr. Todd's opinions and shed doubt on the validity of his testimony, such challenges are better suited for cross-examination during trial. Dr. Todd has not opined that treating Sigsby's pain with more than seven RFAs would be inappropriate or that more than seven RFAs have never before been prescribed a patient, and Sigsby is free to offer conflicting testimony from his treating physician or expert witnesses. Dr. Todd's opinions are based on his personal knowledge, training, and experience, all of which serve as an adequate and reliable basis for his testimony. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.").

## IV.

Accordingly,

**IT IS ORDERED** that the motion *in limine* to exclude testimony from Dr. Andrew Todd regarding radio frequency ablation procedures is **DENIED.**

New Orleans, Louisiana, February 12, 2019.

_____
LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[18] R. Doc. No. 49-1, at 6; R. Doc. No. 65, at 2.